[Civ. No. 3860. Second Appellate District, Division Two.—July 6, 1922.]

# GEORGE GOODRUM, etc., Appellant, v. EDWARD A. ABAJIAN, Respondent.

[1] SALES — PAYMENT OF INSTALLMENT OF PRICE OF TRUCK — PROPER PARTY—FINDING—EVIDENCE.—In this action to recover the possession of an automobile truck which the plaintiff contracted to sell to the defendant upon the making of certain payments, delivery to be made upon the payment of a certain installment, the finding that the payment was made to the plaintiff before the taking possession of the truck is justified by the evidence, although the money was actually passed to a salesman of plaintiff who was without authority to receive it.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Wellborn, Judge. Affirmed.

The facts are stated in the opinion of the court.

Fredericks & Hanna for Appellant.

M. G. Ferrahian for Respondent.

WORKS, J.—This is an action to recover possession of an automobile truck. Plaintiff and defendant Abajian had entered into an agreement whereby the former contracted to sell the truck to the latter upon the making of certain payments, delivery to be made to Abajian upon the payment of a certain installment of three hundred dollars. Abajian, claiming to have paid this amount, took possession of the vehicle. Judgment went for defendants and plaintiff appeals. Abajian alone is a party respondent as the other defendants are out of the case.

[1] The trial court found that respondent paid the three hundred dollars to appellant before taking possession of the truck. The sole point made by appellant is that this finding is without support in the evidence. The occurrences bearing on this question transpired in the room of one Beardsley, there being present Abajian, Beardsley, who was assistant manager of appellant's business, one Meisel, who was employed as an automobile salesman by appellant, and one Platt. Abajian testified that the payment was made, but Beardsley, Meisel, and Platt all asserted the contrary. Appellant concedes that this state of the evidence justified the trial court in finding that three hundred dollars was paid by Abajian, but he contends that the entire finding is not supported by the evidence, in that the record is barren of evidence tending to show that the payment was made to appellant. Appellant's point is that the money was passed to Meisel, who had no authority to receive money or payments due appellant, and that it was not paid to Beardsley, who alone possessed such authority. Abajian knew of Meisel's lack of authority in this respect, for after the latter had conducted with Abajian the negotiations leading up to the agreement for the sale of the truck he told Abajian that he had no authority to accept the three hundred dollar payment, but that it must be made to Beardsley. It was for the very purpose of making this payment and closing the contract that Abajian went to Beardsley's room when they two and Meisel and Platt were there together. The record shows the following testi-

mony of Abajian: "Mr. Meisel told me the truck was ready and he sent me down to Mr. Beardsley's office. . . . I then went to Mr. Beardsley's office. While I was there I was talking about the insurance because he was charging me a whole lot of money, too much, and I didn't want to pay that much money. In all we were talking to Mr. Beardsley four or five minutes, something like that, and then he told me, 'Well, just a minute. I am going to call Mr. Meisel,' and said, 'Don't you know him? He knows you because you have been doing business with him.' Mr. Meisel came right into Mr. Beardsley's office and when they were all there Mr. Beardsley says, 'Mr. Meisel, you can talk with Mr. Abajian.' I signed the contract at that time and Mr. Beardsley said I have to sign my bill of sale, whatever it is I have got to sign, and pay money. I don't remember how many papers I signed but there was a few papers. . . . Mr. Beardsley was talking to Mr. Platt and he turned me to Mr. Meisel. They turned around the other way; they started to talk together. After signing the paper I paid money to Mr. Meisel. I paid three hundred dollars, three one hundred dollar bills, and Mr. Meisel got the money. I don't know what he did with it. Q. Did he put it in his pocket or on the table? A. No, no; when he started mentioned money, I says, 'Well, here's the money,' and laid on the desk like this, three hundred dollars; he put the hands on it like this, and that time I think I sign the contract when I give him the money, but I don't remember for sure. I don't remember for sure whether I signed the contract before or after paying the money. I think after I paid. He showed me the contract; Mr. Beardsley was talking with another fellow. I remember I signed the contract, I think after I paid the money. Mr. Meisel gave me the contract. He gave me this paper." Abajian thereupon produced a duplicate of the original contract and the trial judge remarked: "There is no use encumbering the record with two of these long printed things," the original having been already received in evidence; "the only difference is this original white one while signed by Mr. Abajian has not received the signature of Mr. Goodrum, per V. S. B.; while the one in Abajian's possession was completely signed by, as you see, by Goodrum, per V. S. B., meaning Mr. Beardsley. Otherwise the two are exactly the

same.'' We think the record shows sufficient evidence to justify the finding that the three hundred dollars was paid to appellant.

Judgment affirmed.

Finlayson, P. J., and Craig, J., concurred.